TERRY PENNEY            )
                                   )
v.                              )         1:11-cv-35\1:04-cr-36
                                   )         *Edgar*
UNITED STATES OF AMERICA     )

## MEMORANDUM

Terry Penney ("Penney"), by and through counsel, Attorneys Gerald H. Summers and Marya L. Schalk, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No 407).[1] Penney contends he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

Plaintiff subsequently filed an untimely *pro se* motion to amend his § 2255 motion more than two years after the expiration of the applicable one year statute of limitation for filing such a motion (Criminal Court File No. 421). Local Rule 83.4 (c) provides that "[w]henever a party has appeared by attorney, that party may not thereafter appear or act in his or her own behalf in the action or proceeding, unless an order of substitution shall first have been made by the Court, after notice by the party to the attorney and to the opposing party." Because Penney is still represented by counsel and an order of substitution has not been made, the motion to amend will be **DENIED** (Criminal Court File No. 421).

The § 2255 motion, together with the files and record in this case, conclusively show Penney is entitled to no relief under 28 U.S.C. § 2255. For the reasons which follow, the Court has

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

determined an evidentiary hearing is not necessary and concludes Penney's § 2255 motion lacks merit and will be **DENIED** (Criminal Court File No. 407).

## I.    STANDARD OF REVIEW

A sentence in a criminal case must be vacated if the Court makes a finding "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, . . . " 28 U.S.C. § 2255(a). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 535 U.S. 967 (2002).

A motion filed pursuant to 28 U.S.C. § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *United States v. Johnson*, 940 F.Supp. 167, 170 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Clemmons v. Sowders*, 34 F.3d 352 (6th Cir. 1994). In order to prevail on a § 2255 motion alleging non-constitutional error, "a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *United States v. Goddard, Slip Copy,* 2013 WL 5410939, *5 (6th Cir. Sept. 26, 2013).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to determine after a review of the answer and the record whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. The Court finds it is not necessary to hold an evidentiary hearing.

## II.    PROCEDURAL BACKGROUND

A second superseding thirty-seven count indictment was filed on December 15, 2004, charging Penney in sixteen counts (Criminal Court File No. 64). Count One charges a conspiracy beginning in January of 1998 and continuing until approximately April 2004, between Penney and his co-defendants, to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride in violation of Title 21 U.S.C. §§ 846 and 841(b)(1)(A). Count Two charges, beginning approximately January of 1998 and continuing to about January 2004, Penney and some of his co-defendants conspired to distribute 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana in violation of Title 21 U.S.C. §§ 846 and 841(b)(1)(B).

Count Four charges Penney with having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, possessing various firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Count Five charges Penney with possessing with the intent to distribute marijuana on August 19, 2003, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(D). Count Six charges Penney with possessing firearms in furtherance of a drug trafficking in violation of 18 U.S.C. § 924(c) offense on that same date. Count Seven charges that on the same date Penney knowingly possessed a stolen firearm, which previously had been shipped in interstate commerce, knowing and having reasonable cause to believe the firearm was stolen, in violation of 18 U.S.C.

§ 922(j). Count Eight charges Penney with knowingly possessing a firearm with the manufacturer's serial number removed, obliterated, and altered, that previously had been shipped in interstate commerce, in violation of 18 U.S.C. § 922(k).

Count Ten charges that from on or about October 7, 2003, until October 8, 2003, Penney and two of his co-defendants attempted to violate 21 U.S.C. § 841(a)(1), that is, possessing with the intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. § 846 and 841(b)(1)(A). Court Eleven charges Penney and two of his co-defendants with attempting to violate 21 U.S.C. § 841(a)(1) when they possessed, with intent to distribute, marijuana in violation of 21 U.S.C. § 846 and 841(b)(1)(D). Count Twelve charges that on or about October 14, 2003, until on or about October 15, 2003, Penney and two of his co-defendants attempted to violate 21 U.S.C. § 841(a)(1) when they possessed, with the intent to distribute, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(A).

Count Twenty charges Penney with attempt to kill Special Agent Paris Gillette of the Bureau of Alcohol, Tobacco, Firearms, and Explosives on January 13, 2004, in violation of 18 U.S.C. § 1114. Count Twenty-One charges Penney with knowingly using and discharging a firearm during in relation to the crime of violence in Count Twenty in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Count Twenty-Two charges that on January 13, 2004, Penney and a co-defendant attempted to violate 21 U.S.C. § 841(a)(1) , that is possessing with intent to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D). Count Twenty-Three charges that on January 13, 2004, Penney possessed a firearm in furtherance of the drug trafficking offense charged in County Twenty-Two in violation of 18 U.S.C. § 924(c). Count Twenty-Four charges that on January 13, 2004, Penney

fired a weapon in furtherance of a major drug offense in violation of 18 U.S.C. § 36(b)(1). Count Twenty-Five charges that on January 13, 2004, Penney previously having been convicted of a crime punishable by imprisonment for a term exceeding one year, possessed an assortment of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1) (Criminal Court File No. 64).

Following a jury trial, the jury returned a verdict of guilt on all Counts except Court Seven of the Indictment (Criminal Court File No. 201). The Court sentenced Penney to 895 months (i.e., 235 months on each of Counts One, Two, Ten and Twelve; 120 months on each of Counts Four and Twenty-Five; 60 months on each of Counts Five, Eight, Eleven, and Twenty-Two; and 235 months on each of Counts Twenty and Twenty-four, all to run concurrently. And, 60 months on Count Six and 300 months on each of Counts Twenty-One and Twenty-Three, to run consecutively to each other and all other counts) in prison. The Court also sentenced Penney to 5 years supervised release and imposed a $25,000.00 fine and $1,500.00 special assessment (Criminal Court File No. 298).

On August 7, 2009, the Court of Appeals for the Sixth Circuit affirmed Penney's convictions and sentences (Criminal Court File No. 389). The Supreme Court of the United States denied certiorari on February 22, 2010 (Criminal Court File No. 400). Penney, through counsel, timely filed the instant § 2255 motion (Criminal Court File No. 407).

## III.    FACTUAL BACKGROUND

The facts underlying Penney's offense conduct are taken from the Court of Appeals for the Sixth Circuit opinion affirming his conviction and sentences (Criminal Court File No. 389):

> Terry Eugene Penney lived at 10609 Dayton Pike, in Soddy-Daisy, Tennessee, less than three miles away from the Soddy-Daisy Police Department. Penney raised roosters and ran a bar called Penney's Place, both familial activities that Penney has carried on. For about six years, Penney was in a tempestuous relationship with Devota Bowman, during which Bowman lived with Penney "off and on." Soddy-Daisy police officers were no strangers to Penney's residence, where they

5

were called on the "numerous occasions" when the relationship between Penney and Bowman turned violent. The last of such visits took place on August 2, 2003, when, according to the police report, Penney had "pushed [Bowman] out," and she had left the residence. By August 18, 2003, Bowman had again moved back in with Penney.

On the morning of August 19, 2003, following another quarrel with Penney, a barefoot Bowman hitch-hiked to the Soddy-Daisy police station to file a complaint for assault against Penney. While Bowman was at the station, Penney arrived and demanded that police remove Bowman from his residence. The police arrested Penney for assault and transported him to the Hamilton County Jail. As the police officers worked on Bowman's report, she offered information about narcotics in Penney's house. Detective Mike Sneed requested her consent to search the residence; Bowman agreed and signed a consent form.

Soddy-Daisy officers then accompanied Bowman to the Dayton Pike residence. Bowman led the officers, including Sneed, to the front door, which was locked. Because she did not have a key, Bowman went around to the back door, which she opened without a key. Sneed later learned that only a special "trick" opened the back door. Bowman led the officers around the house, pointing to various items of contraband and picking up her own clothing and personal items as they walked. Officers uncovered numerous guns, cash, scales, and narcotics, removing some of these items from unlabeled, unlocked containers. Police officers then took their search outside the house, discovering a .22-caliber rifle in a pick-up truck and a shotgun in the chicken house.

The next day, Penney, having been released, went to the Soddy-Daisy police station to inquire about his guns. Sneed explained that the guns were confiscated as a result of a search, to which Bowman consented. Penney informed the police that Bowman did not live with him and had no authority to consent to the search.

Following the search on August 19, 2003, the Soddy-Daisy Police and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") opened an investigation of Penney. During the course of the investigation, police recorded several conversations between Penney and Leonard (a.k.a. Sonny) Stewart, a confidential informant ("CI"). A conversation recorded four months later, on January 3, 2004, revealed that the CI would travel to California to pick up approximately 200 pounds of marijuana, for which Penney would provide two buyers, "Midget" and "Cotton" (a.k.a. William North). On January 12, 2004, in a recorded phone conversation, the CI told Penney that he had returned from his trip and instructed Penney to arrange a meeting with Cotton at Penney's Dayton Pike residence the next day at noon.

Prompted by this conversation, Detective Sneed obtained an anticipatory search

warrant for Penney's residence, business, vehicles, and person. The warrant was executable only after Penney met with the CI "to examine and attempt to purchase the narcotics by obtaining funds or promising to obtain funds in the near future in order to complete the transaction." On January 13, 2004, at approximately 12:20 pm, the CI went to Penney's residence, where he found Penney alone without Cotton. In the course of a recorded conversation between the CI and Penney, Cotton telephoned Penney, indicating that he was on his way. The CI left, and made at least three recorded phone calls to Penney to determine whether Cotton had arrived. When Penney finally told the CI to return to the residence, the CI arrived, wired, at approximately 6:15 pm. The CI went inside the residence, met Cotton and Penney, and told Cotton he wanted to see the money. Cotton agreed, stating that he had $35,000 for fifty pounds of marijuana, at $700 per pound; Penney was to receive $100 per pound as the middle-man. Penney remained inside, as the CI and Cotton stepped outside. Cotton showed the CI the money inside Cotton's vehicle. The CI stated that he could see the money, a predetermined statement to indicate to the police that they should execute the warrant.

Soddy-Daisy police, Hamilton County Sheriff's Department, and ATF officers moved to execute the search warrant. All of the officers were wearing dark bulletproof vests with appropriate official insignia on front and back, identifying them as law enforcement. Some of the officers (the "entry team") knocked on the front door, yelling "Sheriff's Department! Search warrant! Get on the ground!" Other officers, including Sneed, Hamilton County Detective Marty Dunn, and ATF Special Agent Paris Gillette, circled around to the back of the residence, where the vehicle with the money was parked. Sneed testified that as he approached, he saw Cotton and the CI being taken into custody by other officers, and heard activity inside the residence. As Sneed went toward the residence, he heard gunshots. When Sneed approached the back porch, Detective Dunn, who was standing at the back door, told Sneed that Penney had shot him. Penney yelled that he wanted to see a badge, and Dunn threw his badge through the open back door. Sneed also called out to Penney identifying himself, and Penney recognized his voice. Sneed entered the residence with his gun drawn and saw Penney holding a shotgun. Sneed ordered Penney to put down the gun several times, and Penney eventually complied and surrendered the weapon. Detective Dunn and another Hamilton County officer, Mark King, then placed Penney in handcuffs. As a result of the operation, Agent Gillette sustained a serious head wound; Dunn and King were also injured.

The subsequent search turned up $35,000 in Cotton's truck and five weapons inside

Penney's residence. No narcotics were found inside Penney's residence.

*United States v. Penney,* 576 F.3d 297, 301-303 (6th Cir. 2009), *cert. denied,* 559 U.S. 940 (2010).

## IV.    ANALYSIS–INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Penney asserts his trial counsel rendered ineffective assistance at trial and on appeal in four different instances (with several subclaims) each of which the Court will analyze separately after discussing the law applicable to ineffective assistance of counsel claims.

### A.    Applicable Law

The Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

In order to demonstrate deficient performance, it must be shown that counsel's representation fell "below an objective standard of reasonableness" in light of the "prevailing professional norms." *Strickland*, 466 U.S. at 686-88. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996) (internal punctuation and citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

[ultimate] judgment." *West v. Seabold*, 73 F.3d at 84.

A reviewing court cannot indulge in hindsight but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690; *McQueen*, 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828. "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). A court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

To establish the prejudice prong, a petitioner must show that "counsel's conduct so undermined tthe proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. The Supreme Court has reiterated the standard of prejudice in *Wiggins v. Smith*, 539 U.S. 510 (2003):

> [T]o establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
>
> would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id*. at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694).

When applying these standards, the Court is cognizant of the fact that there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984), *cert. denied*, 523 U.S. 1088 (1998); *McQueen [v. Scroggy*], 99 F.3d [1302,] 1310-11 [6th Cir. 1996]). In addition, the Court is mindful that "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . ." *Burt v. Titlow*, ___ S. Ct. ___, 2013 WL 5904117 (U.S. Nov. 5, 2013).

**B.     Ineffective Assistance of Counsel Claims**

Penney challenges counsel's assistance in three major respects: (1) in relation to the motion to suppress–(a) counsel's alleged failure to present relevant grand jury testimony of his girlfriend to district court; (b) counsel's alleged failure to raise the factual issue of whether his girlfriend gave consent for the search of his house; (c) during appeal counsel's alleged failure to provide sufficient facts, arguments, and citation to the record regarding the August 29, 2003, search of his residence to permit meaningful appellate review; (2) in relation to challenging the § 922 Counts–alleges trial counsel made the wrong argument challenging the 18 U.S.C. § 922(g) charges; and (3) during sentencing–alleges counsel ineffectively failed to speak on Penney's behalf, present any mitigating evidence, and argue his sentence was greater than necessary to achieve the purposes of sentencing (Criminal Court File Nos. 1 & 2).

1.      *Motion to Suppress*

Penney claims trial counsel made three significant errors, in relation to the suppression issue, rendering their assistance ineffective and prejudicial.  First, Penney contends counsel failed to introduce relevant grand jury testimony of his girlfriend, Devota Bowman ("Ms. Bowman"), which he claims contains exculpatory and favorable evidence.  Second, Penney challenges trial counsel's failure to raise the issue of whether she actually even gave consent.  In his third and final claim regarding the motion to suppress, Penney claims that due to counsel's ineffectiveness on appeal, the Sixth Circuit was prevented from meaningfully reviewing the search and consent issues involved in the case (Criminal Court File No. 407).

a.      Grand Jury Testimony

Penney argues trial counsel was ineffective for failing to present the grand jury testimony of Ms. Bowman to the district court.  Penney maintains this testimony was directly relevant to the issues of apparent and actual authority that were raised by trial counsel and to the issue of consent, which trial counsel failed to raise.  Penney contends the grand jury testimony bolstered his argument and corroborated his and Attorney Roddy's testimony that Ms. Bowman did not have apparent or actual authority to consent (Criminal Court File No. 408).

The government maintains the Jencks Act[2] specifically prohibited trial counsel from requesting or obtaining the transcript of Ms. Bowman's grand jury testimony as the Jencks Act only applies to government witnesses and only during the trial phase. According to the government, because Ms. Bowman was not a government witness and was not testifying at trial, counsel had no

---

[2]      The Jencks Act does not require disclosure of government witness statements until the witness has testified on direct examination during trial.

legal basis to request, much less obtain and present her grand jury transcript during the suppression hearing (Criminal Court File No. 413).

Penney counters that the government's reasoning is flawed. Penney argues the Jencks Act is not applicable in this situation and therefore, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the grand jury transcript should have been turned over to trial counsel upon their request (Criminal Court File No. 414).

The Supreme Court has consistently "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings[,]" *Douglass Oil Co. Of Carlifornia v. Petrol Stops Northwest,* 441 U.S. 211, 218 (1979). Nevertheless, Rule 6(E) of the Federal Rules of Criminal Procedure provides a court may authorize disclosure of a grand-jury matter under certain limited circumstances, only two of which are arguably applicable here: "(i) preliminarily . . . in connection with a judicial proceeding[,]" or (ii) "at the request of a defendant who shows a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Rule 6 (E) (i) and (ii). A disclosure of testimony before the Grand Jury may properly be obtained only upon a showing that "a particularized need for disclosure outweigh[s] the interest in continued grand jury secrecy." *Douglas Oil Co. Of California v. Petrol Stops Northwest,* 441 U.S. at 223.

Here, although trial counsel did not have the transcript during the second day of the suppression hearing (Criminal Court File No. 364, pp. 12-13 (suppression hearing transcript), Penney states counsel received a copy of the grand jury testimony prior to trial. Penney explains he located a copy of Ms. Bowman's grand jury testimony in the files of trial counsel (Criminal Court File No. 408, p. 6 (Memorandum Supporting § 2255 motion). Penney argues if counsel had this grand jury testimony prior to the Report and Recommendation being filed in this case, he should

have submitted it to the court.

The issue before the Court is whether Penney has overcome the strong presumption that trial counsel's decision not to present the grand jury testimony was sound strategy. *Strickland,* 466 U.S. at 690-91. The burden is on Penney to demonstrate counsel's performance was constitutionally deficient, and that the deficient performance prejudiced the defense by depriving him of a fair trial with a reliable result. *Strickland v. Washington,* 466 U.S. 687. Penney has not demonstrated trial counsel's strategic decision not to present the grand jury testimony was unreasonable. *Goldsby v. United States*, 152 Fed.Appx. 431, 435 (6th Cir. Oct. 12, 2005) (unpublished table decision), *available in* 2005 WL 2572362.

Notably, Penney only submitted a few select pages of Ms. Bowman's February 11, 2004, grand jury testimony, none of which convince the Court that trial counsel did not act reasonably under all the circumstances or that there is a reasonable probability that, but for trial counsel's decision not to introduce the grand jury testimony, the result of the proceeding would have been different (Criminal Court File No. 407-1). For the reasons explained below, the grand jury testimony does not undermine the Court's confidence in the outcome of the suppression hearing.

Ms. Bowman testified she had a relationship with Penney for the previous six and a half years. At times she resided with him and then she would return to her home. Ms. Bowman testified she stayed with Penney from time to time the previous summer, stayed there "a while in September and October[,]" and from New Year's Eve until January 11th or 12th, 2004. Ms. Bowman was not

at Penney's residence on January 13, 2004, when the anticipatory search warrant was executed (Criminal Court File No. 407-1, pp. 3-5).

Ms. Bowman testified she did not remember Officer Sneed asking her for consent to search the house (Criminal Court File No. 407-1, p. 6). When asked what her relationship with Penney was at the time of her testimony, she responded:

> I have a lot of feelings for him, especially when he did change as far as personally toward me. But then again it was very short lived. I don't know that it would have continued. I do talk to him, try to keep his spirits up because he knows what he has done. And I guess I give them more attention and more thought than really I should.

(Criminal Court File No. 407-1, p. 7). Ms. Bowman further testified she was not his girlfriend anymore because "[i]t's kind of hard to be." (Criminal Court File No. 407-1, p. 7).

When Ms. Bowman was asked whether she objected to or ask the officers not to come inside the house after she signed "that piece of paper," she explained:

> No, actually because I had no - - I don't know. I was just really upset, and he told me that I was just signing a statement that they did not kick the door in because they watched me just - - I mean you just barely had to kick it and push on it to get it to come open. And, you know, I just felt like they were just saying, well, we did not do it.

(Criminal Court File No. 407-1, p. 8). Ms. Bowman further testified that she only had clothes in a little bag because she did not stay there "constantly." The officers, however, "kept searching the house for mail that had [her] name on it. There wasn't any. They kept looking in his closets for my clothes. And all I had was a change of clothes." (Criminal Court File No. 407-1, p. 8).

Ms. Bowman's testimony in front of the Grand Jury is vague and considering her relationship with Penney, the evidence in the record, and the testimony of several law enforcement officers involved in the search, it does not undermine the Court's confidence in the outcome of Penney's criminal proceedings. Undoubtedly, the Magistrate Judge would have given little weight, if any, to her grand jury testimony considering he gave no credence to Ms. Bowman's August 28, 2003, affidavit wherein she averred that "she was not 'living' or 'staying' at Penney's house on August

19, 2003, and that she has only one residence – HC 71, Box 104, Graysville, TN. She did not give the Soddy Daisy Police or any one else permission to search Penney's residence on August 19, 2003, and she went to Penney's residence with police on that date to obtain her personal items which were in a bag sitting next to the entrance kitchen door." (Criminal Court File No. 51, p. 13).

First, Penney has not overcome the strong presumption that trial counsel's decision not to present the grand jury testimony was sound strategy. *Strickland,* 466 U.S. at 690-91. The grand jury testimony does not show that Ms. Bowman lacked "actual and/or apparent authority to consent to the search of defendant's residence, the unlocked containers therein and the outbuilding (chicken house) on August 19, 2003[,]" as previously determined by the Magistrate Judge and Accepted and Adopted by the undersigned (Criminal Court File Nos. 51, 61). As explained above, the Magistrate Judge gave no credence to Ms. Bowman's affidavit, thus her credibility was virtually destroyed. Considering Ms. Bowman's credibility issues, there is nothing before the Court to support an inference that Penney's trial counsel were deficient in failing to present her grand jury testimony.

Even assuming for the sake of discussion that trial counsel were deficient for failing to present Ms. Bowman's grand jury testimony, Penney is unable to demonstrate prejudice as he has not demonstrated a reasonable probability, that had the grand jury testimony been presented during the suppression proceedings, the result of the proceeding would have been different. In addition to giving no credence to Ms. Bowman's affidavit, the Magistrate Judge "placed no credence in Penney's testimony[,]" and found his testimony attempting "to minimize his relationship with Devota Bowman and the number of occasions on which she stayed/was present at Penney's residence, as 'grossly inconsistent' and 'not reliable.'" (Criminal Court File No. 61, p. 4 (quoting Criminal Court File No. 43, p. 17)). Based on the portion of Ms. Bowman's grand jury testimony

that was provided to the Court, she admitted that during the six and a half years that she dated Penney, she would stay at his residence anywhere from "a few days, sometimes a week, sometimes two weeks, a month, ..." It appears it may have been more than a month at a time but testimony responding to that question ended mid-sentence on page six and page seven was not submitted to the Court (Criminal Court File No. 407-1, p. 6). Further, she admitted staying at Penney's residence from time to time during the summer of 2003, and after the August 2003 search of his residence. Considering Ms. Bowman's grand jury testimony along with the other evidence in this case, the Court's confidence in the outcome of Penney's suppression hearing is not undermined.

Accordingly, there is no need for an evidentiary hearing to resolve Penney's arguments regarding the grand jury testimony because the record and the parties pleadings conclusively show that no relief is warranted on this claim.

b. Consent

Penney also challenges trial counsel's failure to raise the issue of whether Ms. Bowman actually gave consent to law enforcement to search Penney's residence (Criminal Court File No. 407). Penney relies on Ms. Bowman's affidavit and grand jury testimony and seemingly ignores the fact that prior to law enforcement transporting her to Penney's residence she orally consented to the search of the residence according to Officer Sneed and subsequently signed a consent to search form which was witnessed by Officer Kevin Luck of the Soddy-Daisy Police Department (Criminal Court File No. 363, pp. 11-12).

As previously discussed, the Magistrate Judge gave "no credence" to Bowman's affidavit, finding it contradicted by the credible testimony of law enforcement officers and "by the written

consent form which Bowman herself signed." (Criminal Court File No. 40, p. 16). Ms. Bowman's testimony that she did not remember whether Officer Sneed asked her for consent to search the house does not demonstrates that she did not consent nor does it weaken the evidence demonstrating she did in fact consent to the search (Criminal Court File No. 407-1, p, 6). In other words, Ms. Bowman's lack of memory does not defeat the evidence of her written consent and the testimony of law enforcement officers that she gave consent.

Counsels' decision to litigate the legality of Ms. Bowman's consent rather than whether she actually gave consent for the search, considering there is a signed and witnessed consent form, reflects a strategic decision and not unreasonable performance. "Representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial." *Harrington v. Richter*, ___ U.S ___, 131 S.Ct. 770, 791 (2011). Even assuming for the sake of this discussion that counsels' decision not to challenge the fact of consent was unreasonable and thus, deficient, Penney has not demonstrated he suffered any prejudice since he has presented no evidence which allows the Court to even infer the written consent is unreliable.

In sum, Penney has the burden in this proceeding to prove his claims, and he has not carried his burden. Penney has not submitted any credible evidence indicating Ms. Bowman did not consent to the search of his residence. Accordingly, Penney's claim that counsel was ineffective for failing to contest the fact of Ms. Bowman's consent is meritless and § 2255 relief will be **DENIED**.

c.     <u>Appeal</u>

Next, Penney argues trial counsel was ineffective on appeal for failing to provide adequate

argument, factual background, or citation to the record to allow the Sixth Circuit to give a meaningful review to the search and consent issues involved in the case. Penney asserts appellate counsel performed deficiently in several instances. First, Penney contends should have emphasized Ms. Bowman's affidavit and made it a part of the appellate record. Next Penney contends appellate counsel should have emphasized that apparent authority to consent had to be based on what the officers knew prior to entering the house. Penney's third complaint is that appellate counsel should have gone into greater detail explaining the testimony regarding how often Ms. Bowman stayed at Penney's residence citing the transcripts, the grand jury testimony, and the affidavit. Fourth, according to Penney, appellate counsel should have made Officer Luck's August 19, 2003, report of domestic assault part of the appellate record and argued that Officer Luck's statement demonstrates "Ms. Bowman advised that on 08/18/2003 in the evening hours she was called by her ex-boyfriend Terry Penney asking her to come to his house."

Although Detective Sneed conceded Ms. Bowman told the officer she had arrived at Penney's residence the day before she swore out the warrant, he explained, that both Ms. Bowman and Penney subsequently indicated she actually arrived at Penney's residence on Sunday, August 17, 2003, the day she sent her daughter off to college (Criminal Court File No. 363, p. 43). Nevertheless, when the Sixth Circuit reviewed the search issue, they considered the on and off relationship of this couple, the fact Ms. Bowman was no longer staying at Penney's house at the conclusion of an August 2, 2003, incident, and relied on the fact that Ms. Bowman told the Detective Sneed that although they had "broken up six months ago, they had now reconciled and that she had moved back in the day before." (Criminal Court File No. 389,p. 12). Therefore, providing the actual August 19, 2003, report would have been of no consequence since the Sixth Circuit

18

considered the facts surrounding their relationship on August 19, 2003, when reaching their decision to affirm this Court's denial of the motion to suppress. Accordingly, Penney can not demonstrate he suffered any prejudice.

Assuming for the sake of discussion that appellate counsel performed deficiently for failing to provide adequate argument, factual background, or citation to the record to allow the Sixth Circuit to give a meaningful review to the search and consent issues involved in the case, Penney has failed to carry his burden of establishing a reasonable probability that the result would have been different, as "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 131 S. Ct. at 792.

Penney claims appellate counsel should have emphasized Ms. Bowman's affidavit and made it a part of the appellate record. The Magistrate Judge concluded it deserved no credence, and Penny has submitted nothing from which the Court can infer the Sixth Circuit would have reached a different conclusion. Second he claims counsel should have emphasized that apparent authority to consent had to be based on what the officers knew prior to entering the house and reviewed those facts. Notably lacking, are the specific facts Penney claims appellate counsel should have discussed. Moreover, the appellate brief reflects counsel identified the pertinent facts and devoted a section to arguing Ms. Bowman lacked actual or apparent authority to authorize the search (Criminal Court File No. 407-4, pp. 3-8; 9-14).


Penney also claims appellate counsel failed to provide the details of the search and supporting facts, and cite to the record. Again, Penney has failed to provide the details of the search and supporting facts omitted by appellate counsel and the appellate brief includes the pertinent

details of the search and supporting facts, and cites to the transcript of the motion to suppress (Criminal Court File No. 407-4, pp. 3-8). Penney challenges appellate counsel's failure to make Officer Luck's report part of the record, but as previously noted, Detective Sneed explained that both Ms. Bowman and Penney, subsequently recollected that she arrived at his house on Sunday and the Sixth Circuit considered that the parties had reconciled and Ms. Bowman had moved back in the day before (Criminal Court File No. 389, p. 12).

Finally, Penney complains that appellate counsel spent very little time discussing Petitioner's demand that Ms. Bowman not be allowed into his residence; a fact he contends requires a finding of lack of good faith for conducting the search and apparent authority. Appellate counsel explained, in the appellate brief, that law enforcement had actual notice that the true owner of his residence had terminated any "mutual use" of the residence that Ms. Bowman had enjoyed prior to being evicted earlier that morning and Penney emphatically told the officers Ms. Bowman was no longer a welcome guest when he told them he wanted her "immediately removed (Criminal Court File No. 407-4, pp. 9-14). The majority of the Court of Appeals for the Sixth Circuit apparently did not find the argument persuasive. After considering these claims individually and cumulatively, the Court is unable to conclude that had appellate counsel presented and emphasized this evidence in some other manner–a manner which Penney has failed to identify– there is a reasonable probability the Sixth Circuit would have granted him relief.

There simply is no evidence in the record from which the Court can infer Penney is able to demonstrate a reasonable probability of a different result on appeal. Accordingly, Penney will be **DENIED** relief on his claim that appellate counsel was ineffective.

2.       *Prior Felony Conviction*

Penney concedes that trial counsel went to great lengths to challenge the underlying felony conviction, but maintains counsel failed to make the correct argument.  According to Penney, 18 U.S.C. § 922(g)(1) requires the maximum penalty for the underlying offense be more than one year and it does not matter whether the offense was a misdemeanor or felony.  What matters is the maximum penalty for the offense.  Penney argues the maximum penalty for his prior conviction was one year, not "more than one year."

The government counters that Penney's prior Tennessee conviction for attempt to commit a felony has been properly classified as a felony under 18 U.S.C. § 922(g)(1) by four different courts despite trial counsel's extraordinary tenacious attempts to have it disqualified: the Criminal Court for Hamilton County, Tennessee (Nos. 130199, 248876), the Tennessee Court of Criminal Appeals (*Penney v State*, 2005 WL 3262929 (Tenn. Crim. App.), *app. for permission to appeal denied* (Mar. 27, 2006)*,* this Court (Criminal Court File No.24), and the Sixth Circuit, *United States v. Penney*, 576 F.3d 297, 305 (6th Cir. 2009).  (Criminal Court File No. 413).  Specifically, the Sixth Circuit has already found Penney's prior conviction to be a qualifying felony under § 922(g)(1), noting the Tennessee Court of Criminal Appeals likewise had deemed the conviction to be a felony.  *See United States v. Penney,* 576 F.3d at 305.  In addition, both this Court and the Sixth Circuit have already rejected the suggestion that Penney's prior conviction did not carry a statutory maximum in excess of one year (Criminal Court File No. 413).

"There are . . . countless ways to provide effective assistance in any given case.  Even the best  criminal defense attorneys would not defend a particular client in the same way." *Harrington v. Richter,* 131 S. Ct. 770, 788-89 (2011).  "Rare are the situations in which the wide latitude counsel

must have in making tactical decisions will be limited to any one technique or approach." *Id.* at 789. When evaluating counsel's performance, the Court is cognizant of the strong presumption that counsel's attention to certain issues to the exclusion of others reflects a tactic rather than sheer neglect. *Id.* at 790.

"According to the judgment, the petitioner was charged with 'FEL. SELLING A CONT. SUBSTANCE" and pled guilty on May 19, 1976, to "ATTEMPT TO COMMIT A FELONY.'" *Penney v. State,* 2005 WL 3262929, at *2 (Tenn. Crim. App. 2005). The Court minutes reflect Penney pleaded guilty to Selling a Controlled Substance, Schedule IV, and his 11 month and 29 day sentence was suspended for 5 years. *Id.* at *3.

According to Penney, the applicable Tennessee statute is Tennessee Code Annotated section 39-603 (1975) and it provides:

> if any person assaults another, with intent to commit, or otherwise attempts to commit, any felony or crime punishable by imprisonment in the penitentiary, where the punishment is not otherwise prescribed, he shall, on conviction be punished by imprisonment not exceeding five (5) years, or in the discretion of the jury, by imprisonment in the county workhouse or jail not more than one (1) year, and by fine not exceeding five hundred dollars ($500).

Penney argues the statute provides two alternative maximum sentences. Tennessee courts have determined that just because the attempt statutes allow for discretionary sentencing in either the penitentiary or by fine and imprisonment in the county jail, does not make it any less an offense punishable by imprisonment in the penitentiary or disqualify it as a felony. *State v. Seltzer,* 1987 WL 4867, at *3 (Tenn. Crim. App. 1987). Penney's state crime was "punishable by imprisonment for a term exceeding one year[,]" thus qualifying as a prior conviction under 18 U.S.C. § 922(g)(1). The fact that his sentence was 11 months and 29 days and suspended for 5 years is of no

consequence, since the crime was punishable under Tennessee law by a term of up to five (5) years. Section 922(g)(1) does not look to the actual sentence imposed but to the potential maximum punishment under the statute. Because the crime of attempt to commit a felony is punishable under Tennessee law by a term of up to five years, it qualifies as a prior conviction under § 922(g)(1). *See United States v. Burchard,* 50 F.3d 829 (6th Cir. 1995), *available at* 1995 WL 385109, *3 (concluding the crime of attempt to commit a felony– Tenn. Code Ann. § 39-603 (1975)–is punishable under Tennessee law by a term of imprisonment not exceeding five years); *United States v. Beazley,* 780 F.2d 1023 (6th Cir. 1985), *available at* 1985 WL 13961, *3 (attempt to commit a felony under Tennessee law is a felony and carries a maximum sentence of five years imprisonment). Moreover, both this Court and the Sixth Circuit have already rejected the argument that Penney's prior conviction did not carry a statutory maximum sentence in excess of one year (Criminal Court File No. 40, p. p. 6; *Penney,* 576 F.3d at 305).

In conclusion, counsel was not deficient for failing to make such an argument, and Penney is unable to demonstrate he suffered any prejudice since the argument lacks merit. Accordingly, Penney's claim that counsel was ineffective in failing to challenge his prior state conviction on the ground that his sentence was less than a year lacks merit and will be **DENIED**.

3. *Sentencing*

Penney claims counsel provided ineffective assistance during his sentencing proceeding. Penney suggests various grounds upon which trial counsel should have attacked the PSR and claims counsels' failure to present any favorable evidence on Penney's behalf, in light of the fact that the PSR reflected his guidelines were calculated as 1020 months to life, "must be ineffective assistance of counsel." (Criminal Court File No. 2). At first glance the sentencing transcript appears to support

Penney's claim that counsel performed deficiently during sentencing as counsel did nothing more than state the two objections for the record and presented no mitigating evidence or try to rehabilitate Penney. A thorough examination of the record reveals, however, Penney has presented no substantial credible evidence with which trial counsel could have rehabilitated Penney or mitigated his conduct of which the Court was not aware and that would have resulted in a lower sentence. Likewise, there is no suggestion of any additional meritorious objections that trial counsel should have lodged against the PSR. However, given Penney was facing a substantial sentence, i.e., 1020 months to life, seemingly the better practice would have been for counsel at least to have said something on Penney's behalf and present an argument that the sentence was greater than necessary to achieve the statutory sentencing purposes.

Nevertheless, given that Penney has presented no evidence of any redeeming qualities or any mitigating or rehabilitating evidence unknown to the Court or any viable argument that the sentence was greater than necessary to serve the purposes of sentencing, he has failed to demonstrate counsel was ineffective in that regard because, for the reasons explained below, he cannot demonstrate he suffered any prejudice. The Court will address each alleged incident of ineffectiveness below.

a.    Filing Only Two Objections

First, Penney specifically argues counsel should have filed more than two objections, should have vigorously argued the objections, and complains counsel failed to argue to reduce his 895 months sentence. The presentence report (PSR) reflected Penney's guideline range was 1020 months to life. Counsel filed an objection as to the drug amount and an objection for not crediting Penney for acceptance of responsibility. Penney faults counsel for telling the Court the objections were filed only for the purpose of documenting the issues so as not to waive them, rather than

vigorously arguing these objections during his sentencing hearing (Criminal Court File No. 349–Sentencing Transcript).

The government responds that Petitioner's arguments along with the attached affidavit of Attorney Leslie Cory, does not demonstrate he suffered any prejudice. Attorney Cory analyzed the PSR, thoroughly discussed and analyzed the proper way to prepare and represent a defendant in the United States District Court at sentencing, generally discussed the various objections that could have been made, and avers counsel should have made additional arguments (Criminal Court File No. 422-1). Although Ms. Cory's affidavit included some excellent advice on how to prepare for a sentencing hearing, Penney has failed to submit any factual details of what he claims trial counsel failed to submit during his sentencing hearing.

Although trial counsel did not vigorously object to the drug amount during sentencing, the Court addressed the drug quantities and discussed the objection with the prosecution. Moreover, Penney received the benefit of the drug quantity objection because the Court concluded it would use six kilos of cocaine hydrochloride as the drug quantity rather than the 120 kilograms identified in the PSR. Therefore, Penney's offense level was reduced to 32, and after the enhancements, his total offense level was 38 with guideline of 235 to 293 months on the drug charges (Criminal Court File No. 349, p. 7-8). Therefore, to the extent Penney faults counsel with his performance addressing the drug quantity objection, he is unable to demonstrate prejudice, and therefore, unable to establish ineffective assistance of counsel requiring § 2255 relief.

As to the objection regarding Penney's acceptance of responsibility, during sentencing counsel argued Penney should receive an adjustment for acceptance of responsibility because he went to trial, "for among other reasons, to preserve his right to contest his status of a felon versus

25

that misdemeanor conviction in 1975." (Criminal Court File No. 349, p. 3). The Court rejected that argument. Although Penney admitted being involved in the drug transaction that took place when the shooting occurred, there is no evidence supporting a reduction for acceptance of responsibility based on the whole scheme of his criminal activity as he has never accepted responsibility for all the crimes of conviction. For example, there was testimony by several witnesses that law enforcement were yelling their identity as they were surrounding Penney's residence and attempting to gain entry before the three officers were wounded by Penney; yet, Penney claimed he never heard anything.

United States Sentencing Guidelines § 3E1.1(a) provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." Penney did not meet his burden of proving that a two level reduction was appropriate as he has never accepted responsibility for the total criminal activity for which he has been convicted or voiced any remorse for it. *Application Note 2* explains "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilty, is convicted, and only then admits guilty and expresses remorse." As previously noted, Penney has never admitted his guilt to all of the crimes for which he stands convicted, and he has not expressed remorse.

As to the additional one level reduction for acceptance of responsibility, the Government is afforded discretion as to whether to request an additional reduction. United States Sentencing Guidelines § 3E1.1(b) provides, in pertinent part, that if a defendant qualifies for a decrease under section (a), the offense level may be decreased by one addition level "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of

his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently . . ."   Aside from the fact that Penney did not qualify for a decrease under section (a), he did not meet the requirements to allow the government to exercise its discretion and request an additional one level reduction for acceptance of responsibility.

Penney has not provided any evidence that he accepts responsibility and the sentencing transcript reflects he did not indicate acceptance of responsibility, as he declined to make any statement when given the opportunity (Criminal Court File No. 349, p. 9).  Thus, even if counsel performed deficiently in failing to vigorously argue this objection, Penney is unable to demonstrate he suffered any prejudice as there is no credible evidence of his acceptance of responsibility in the record or his submissions in this § 2255 proceedings.  Accordingly, Penney is unable to demonstrate he was denied ineffective assistance in this regard.

b.  <u>Mitigating Evidence</u>

Penney identifies seven alleged categories of potentially mitigating evidence he contends counsel should have presented at sentencing.  Although the Court was aware of most of the evidence Penney references, it did not deem it sufficient to warrant a lesser sentence.

(1)  *Petitioner Believed He Could Legally Possess Weapons*

Penney contends counsel should have reminded the Court at sentencing that he thought he could legally posses firearms, as evidenced by the fact that after his guns were seized he asked law enforcement officers if they could be returned.  The Court heard Detective Sneed's testimony  that following the August search of Penney's residence, Penney went to the police department and asked the detective how he could get his guns back (Criminal Court File No. 344, p. 37–Trial Transcript).

Even assuming counsel was deficient for not making an argument that Penney did not realize he was not able to own weapons, Penney is unable to demonstrate he suffered any prejudice because the Court does not consider Penney's alleged lack of knowledge mitigating under the circumstances of this case. Accordingly, Penney will be **DENIED** relief on his claim that counsel was ineffective for failing to argue he was not aware he was not allowed to possess weapons.

(2)  *Failure to Proffer Mitigating Evidence of the Nature and Circumstances of the Offense*

Petitioner claims counsel failed to ask the Court to consider the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1) which included mitigating evidence. Specifically, Penney faults counsel with failing to argue Penney had previously been robbed, tied up, and held at gun point and believed he was being robbed when he shot Agent Gillette. In addition, Penney contends trial counsel should have submitted an affidavit by Agent Lee reiterating his trial testimony of the risks involved in law enforcement executing an anticipatory search warrant in the manner that it was done at Penney's residence and the options law enforcement had that likely would have prevented the shooting of Agent Gillette. Penney also contends counsel should have emphasized that Penney did not hear law enforcement identify themselves until after he fired shots and that he told an officer at the scene that he thought he was being robbed.

The Court was aware of this alleged mitigating evidence. When the Court sentenced Penney it considered all the evidence that was presented at trial, and the Court would not have been inclined to reduce Penney's sentence had counsel summarized the evidence. Thus, even if counsel were deficient in failing to make these argument, Penney is unable to demonstrate he suffered any prejudice. Accordingly, relief will be **DENIED** on his claim counsel failed to proffer mitigating evidence of the nature and circumstances of the offense.

(3)     *Confidential Informant*

Penney claims counsel performed deficiently in failing to make any argument regarding the confidential informant's role initiating drug sales with him which pushed him to deal in greater amounts.  The government counters that counsel was not ineffective for failing to make an argument that the Sixth Circuit has repeatedly held that "at no time . . . has this Court recognized the use of sentencing manipulation or its cousin, sentencing entrapment, as a mitigating factor in sentencing." *United States v. Greer,* 415 Fed. Appx. 673 (6th Cir.) *available at* 2011 WL 693231, *2 *cert. denied,* 131 S. Ct. 2476 (2011); *accord United States v. Guest,* 564 F.3d 777, 781 (6th Cir. 2009); *United States v. Gardner,* 488 F.3d 700, 716-17 (6th Cir. 2007).

Aside from the fact that neither the Sixth Circuit nor the United States Supreme Court has recognized this legal theory as a mitigating factor, even if the Court could consider it as a mitigating factor, it would not do so under the circumstances of this case.  Accordingly, Penney will be **DENIED** relief on his claim that counsel were ineffective for failing to argue sentencing manipulation or sentencing entrapment.

(4)     *Counsel's Lack of Preparation for Sentencing*

Penney claims counsel failed to make an argument on his behalf at sentencing and failed to prepare Penney to make a statement on his behalf.  Although it is concerning that counsel failed to make any type of argument on Penney's behalf and allegedly failed to prepare Penney to make a statement, Penney has presented no new evidence which would have persuaded the Court to sentence him to a lesser amount of time in prison.  Moreover, counsel did not need to "prepare" Penney to make a statement, all Penney needed to do was present his statement, expression of remorse, or whatever he wanted to say.  Notably, Penney has not submitted his affidavit or any

evidence of what he would have stated had counsel "prepare[d]" him. Accordingly, because Penney has failed to demonstrate he suffered any prejudice, relief on his claim that counsel were ineffective for failing to prepare for sentencing will be **DENIED**.

> (5)   *Counsel's Failure to Argue Penney's History and Character as Mitigating Evidence*

Penney claims counsel failed to investigate or present evidence that he "may have had a drug problem that contributed to his actions[]" or obtain a psychological assessment "that may have provided mitigating circumstances[.]" (Criminal Court File No. 2). In addition, Penney faults trial counsel with failing to show his remorse for the offense or his willingness to get treatment for drug or mental health issues. Penney also claims trial counsel should have stressed his age and lack of criminal history as mitigating factors and present other unidentified § 3553(a) factors.

Penney has presented no evidence of "a drug problem" or a psychological problem or submitted an affidavit detailing his remorse, his willingness to attend drug treatment or mental health treatment sessions. The PSR reflects Penney experimented with drugs in the past, and at the time of the offense was taking prescribed hydrocodone for his knee pain, but would buy it off the street if he ran out. The Court was aware of this information when it pronounced sentence on Penney. Notably, the Presentence also report reflects Penney stated he did not need substance abuse treatment, and he and his mother reported he had no history of mental health treatment or counseling. Consequently, this claim is frivolous. Penney has failed to submit any credible proof to demonstrate he had any remorse, a drug problem, or a psychological problem that trial counsel could have introduced at sentencing. Accordingly, because Penney has not demonstrated counsel performed deficiently in failing to argue his unidentified history or character evidence, relief will be **DENIED** on this claim.

(6)     *Lack of Character Letters*

Penney faults counsel with failing to present any character letters on his behalf.  Penney has attached several character letters but claims he would have had more at sentencing and they would have provided insight into his character and personal history.  There is nothing in the letters submitted by Penney, which would have influenced the Court to vary downward on Penney's sentence.  Accordingly, relief will be **DENIED** on Penney's claim that counsel was ineffective for failing to submit character letters.

(7)     *Inadequate Appellate Brief*

Penney claims trial counsels' appellate brief regarding sentencing was extremely inadequate, partially as a result of their deficient performance during sentencing and for their failure to provide any reason to doubt the reasonableness of his sentence.  Assuming for the sake of this discussion that counsel performed deficiently in this regard, Penney is not entitled to any relief because he has not suggested, much less demonstrated he suffered any prejudice.  Penney has not submitted any evidence or argument from which the Court can even infer that the sentence was not reasonable based on the facts of this case.

Accordingly, relief on Penney's claim that counsels' appellate brief was inadequate will be **DENIED**.

(8)     *Counsel Failed to Argue Any of the Three § 924(c) Counts*
        *Should Run Concurrently*

Penney claims all three of this 18 U.S.C. § 924(c) offense arose out of the events that occurred on January 13, 2004, and counsel failed to argue any of these sentences should run currently with other offenses or that running each of these offenses consecutively to all the other offenses was

31

a double jeopardy violation. Penney also faults counsel with failing to preserve these issues for appellate review.

The government responds that only two of the § 924(c) counts arose out of the January 13, 2004, event, as the third count arose from the August 19, 2003, search of Penney's trailer. Further, the government maintains the Sixth Circuit addressed and rejected this claim, finding Penney's § 924(c) convictions stemmed from two "distinct predicate offenses: attempted murder of a federal agent, and an attempt to possess marijuana with intent to distribute it." *Penney,* 576 F.3d at 316.

The government correctly responds that only two of the § 924(c) counts arose out of the January 13, 2004, event (Counts Twenty-One and Twenty-Three), the other Count arose from the August 19, 2003, search of Penney's trailer (Count Six), and the Sixth Circuit addressed and rejected this claim. On appeal Penney argued Count Twenty-One (discharging firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)) and Count Twenty-Three (possessing a firearm in futherance of drug trafficking in violation of 18 U.S.C. § 924(c)) should have merged. The Sixth Circuit addressed the claim as follows:

> Third, Penney challenges his convictions under Counts Twenty-One, discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and Twenty-Three, possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). Penney does not elaborate why either conviction lacks sufficient evidence, and we deem these claims waived.

> In the alternative, Penney claims that these two counts should have been merged, along with Count Twenty (attempted murder), for the purposes of sentencing. He argues that sentences for Counts Twenty-One and Twenty-Three should be merged because both are "924(c) violations stemming from the exact same incident, the exact same set of facts." Appellant's Br. at 56.

> We have previously rejected an identical argument on substantially similar facts. *United States v. Nabors*, 901 F.2d 1351 (6th Cir.1990). In particular, we held that when "two separate predicate offenses for triggering § 924(c)(1) were charged and proven," a defendant may be convicted and sentenced for two separate crimes, even

if both offenses were committed in the course of the same event. *Id.* at 1357-58. Here, as in *Nabors*, the two violations of § 924(c)(1) of which Penney is convicted are based on distinct predicate offenses: attempted murder of a federal agent, and an attempt to possess marijuana with the intent to distribute. Penney's unelaborated claim that Count Twenty should have been merged with Twenty-One and/or Twenty-Three for the purposes of sentencing is precluded by the text of the statute. 18 U.S.C. § 924(c)(1)(D)(ii) ("[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."). Therefore, the district court did not commit an error by imposing consecutive sentences for these three crimes.

*United States v. Penney,* 576 F.3d at 316.

The issues decided by the Sixth Circuit on direct appeal are the law of the case. The law of the case doctrine mandates that issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitutes the law of the case. *United States v. Moored*, 38 F.3d 1419, 1421-22 (6th Cir. 1994); United *States v. Campbell*, No. 95-cr-81192, 01-cv-73211-DT, slip op. (E.D. Mich. Jan. 25, 2002), *available in* 2002 WL 3219979, at *2-3. Since the Sixth Circuit determined there was no error committed by imposing consecutive sentences on direct appeal, this Court is bound by that determination. Hence, the law of the case doctrine applies to this claim.

Moreover, contrary to Penney's claim, counsel raised this claim on direct appeal and Sixth Circuit case law provides for consecutive sentences in this instance. Thus, Penney has not demonstrated trial counsel were ineffective in this regard. Accordingly, Penney will be **DENIED** relief on his claim that counsel should have argued his § 924(c) counts should have merged for sentencing purposes.

c.      Greater than Necessary Sentence

In his last claim, Penney argues counsel was ineffective for failing to argue the total sentence of 835 months was "greater than necessary" to achieve the purposes of sentencing. Penney argues his 74 year and 7 month sentence is greater than necessary for effectuating the purposes of sentencing. Given the substantial sentence Penney faced, counsel should have at least put forth an argument that the total sentence was greater than necessary to serve the purposes of sentencing.

Nevertheless, Penney presents no factors to support his claim the sentence was greater than necessary to effectuate the purposes of the sentence, and therefore, he has not demonstrated he suffered any prejudice as the result of trial counsels' alleged shortcomings. Notably, during sentencing, the government asked the Court to impose a life sentence to "send a message to the community of bad guys out there that conduct of the kind Mr. Penney engaged in endangering the life of a law enforcement officer, more than one law enforcement officer, nearly killing him, that is something that [sic] that's something that won't be tolerated, the Court won't tolerate it, the United States won't tolerate it, and people should know if they're going to engage in that kind of conduct they can expect the maximum sentence possible." (Criminal Court File No. 349, p. 10).

When imposing the sentence, the Court explained:

I have carefully considered this case. Of course, I heard all of the evidence at trial. And I've had the presentence report now for a while to look over. And I do think that among the sentencing factors for this Court to consider is the need to provide deterrence. I do agree with Mr. Neff in that respect. I do also think that another fact with respect to Mr. Penney here is the need to provide protection of the public, as well as for law enforcement officers as made clear by the events in this tragic case. Of course, the Court has also considered the guidelines a well. And the Court has not only considered the guidelines, but also the minimum sentences which are provided for in the federal gun statutes, firearms statutes.

For all of those reasons, and pursuant to the Sentencing Reform Act of 1984, it's this Court's judgment that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of , , , 895 months.

As I calculate it, this term consists of 235 months on each of Counts 1, 2, 10 and 12, 120 months on each of Counts 4 and 25, 60 months on each of Counts 5, 8, 11 and 22, and 235 months on Count 20, and 235 months on Count 24, all to run concurrently. That's basically 235 months on all of the drug counts.

Further, the defendant will serve a term to 60 months on Count 6, and 300 months on each of Counts 21 and 23, to be served consecutively to each other and to all other counts, for a term of 895 months.

. . .

I don't consider myself, of course, in light of *Booker* necessarily bound by those guidelines, but this sentence would have been imposed regardless of whether I felt like I was bound by the guidelines. So, we're all making a record here with respect to *Booker* so we don't have to do all of this all over again. . . .

(Criminal Court File No. 349, pp. 10-14).

Although the Court would have listened to any argument counsel presented to try to demonstrate the sentence exceeded what was necessary to satisfy the purposes of sentencing, for the reasons stated above the Court concluded a 895 month prison sentence was necessary to satisfy the purposes sentencing. Penney has presented nothing to change the Court's decision of the necessity of that sentence, especially considering the extent of his criminal drug activity and the fact he shot three law enforcement officers, almost killing one. Accordingly, based on the record, the Court stands by its conclusion that the 895 month sentence is not greater than necessary to achieve statutory sentencing purposes and **DENIES** relief on this claim.

**V.     Conclusion**

Penney has failed to present any facts which establish his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255.   Penney is not entitled to any relief under § 2255 and a judgment will enter **DENYING** his motion.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE